In the Matter of the Transfer Tax upon the Estate of John S. Sheppard, Deceased.

The Comptroller of the State of New York, Appellant; John S. Sheppard, Jr., and Sarah F. Sheppard Denison, Individually and as Executors, etc., of John S. Sheppard, Deceased, Respondents.

Fourth Department, November 12, 1919.

Tax — transfer tax — mortgage bonds, not part of series — failure to pay stamp tax — Tax Law, sections 221b, 330, 331, construed — statute imposing special additional tax strictly construed — failure to pay stamp tax on bonds which are part of series — such bonds subject to additional tax.

Individual bonds left by a decedent and which are secured by mortgages on lands in western States, but which are not part of a series of similar bonds, are not " investments " within the definition of that term as used in section 330 of the Tax Law, and hence are not subject to a stamp tax under section 331. Thus, the failure of the decedent to pay the stamp tax on said bonds before his death does not subject them to the additional transfer tax of five per cent prescribed by section 221b of the Tax Law for a failure to pay a stamp tax.

The word " investments," as used in sections 330, 331 and 221b, means, in the case of bonds, those " forming part of a series of similar bonds."

As section 221b of the Tax Law imposes an additional tax as distinguished from a general tax, it should be strictly construed in favor of the taxpayer and against the State.

Even if it were possible that said western mortgages were subject to a stamp tax under section 331 of the Tax Law, they would not be subject to the additional transfer tax for failure to pay under section 221b because, by the express terms of the latter section, that tax is imposed only upon " every transfer of an investment, as defined in article fifteen of this chapter," and such bonds are not among the class of investments defined in section 330.

But bonds of foreign corporations left by the decedent, which were part of a series, are subject to the additional transfer tax where the decedent failed to pay the stamp tax and this although he was assessed on personal property the year before his death by the local assessors of his residence, it not appearing what part of his personal estate was assessed.

Appeal by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of Yates, dated December 20, 1918, modifying a *pro forma* order fixing the transfer tax herein.

*Spencer F. Lincoln*, for the appellant.

*John S. Sheppard, Jr.*, for the executors, respondents.

FOOTE, J.:

John S. Sheppard, Sr., died July 6, 1918, a resident of Yates county, leaving as a part of his estate several separate individual bonds secured by mortgages on lands in western States, on which were due and unpaid in the aggregate $98,811.50.

On none of these had decedent paid the tax and procured to be affixed the stamps specified in section 331 of the Tax Law.

Decedent also left two corporate bonds of foreign corporations of the appraised value of $1,607.47, which formed part of a series of similar bonds, on which decedent had not paid said tax or procured to be affixed such stamps.

It was the contention of the State Comptroller before the surrogate that all these securities were subject to the additional transfer tax of five per cent under section 221b of the Tax Law because of decedent's failure to pay said stamp tax.

It was the contention of the executors that the western mortgages were not subject to the stamp tax because they are not " investments " within the definition of that term as used in article 15 of the Tax Law by section 330 of that article, since they do not form part of a series of similar bonds, and that the two foreign corporate bonds were not subject to the stamp tax since decedent had been assessed thereon by the local assessors.

The learned surrogate agreed with the contention of the executors as to the western mortgages, but not as to the foreign corporate bonds. He held that section 221b, under which the additional tax of five per cent was sought to be imposed, was unconstitutional, deeming it his duty to follow the decision of the surrogate of New York county to that effect in *Matter of Watson* (104 Misc. Rep. 212). The decision in *Matter of Watson* was later affirmed by the Appellate Division in the First Department (186 App. Div. 48), but was reversed by the Court of Appeals (226 N. Y. 384), and the act declared constitutional and valid.

As to the western mortgages, the question turns upon the construction and meaning of sections 330 and 331 of the Tax Law (added by Laws of 1916, chap. 261), as amended by chapter 700 of the Laws of 1917, and section 221b of the Tax Law, as added by chapter 700 of the Laws of 1917. Those sections so far as material are as follows:

" § 330   Definitions.   The word ' investments,' as used in this article, shall include: Any bond, note, debt, debenture, equipment bond or note, or written or printed obligation, forming part of a series of similar bonds, notes, debts, debentures, written or printed obligations, which by their terms are payable one year or more from their date of issue and which are either secured by a mortgage, pledge, deposit, or deed of trust, of real or personal property, or both, or which are not secured at all.   *   *   *

" § 331.   Payment of tax on investments.   After this article takes effect, any person may take or send to the office of the Comptroller of this State any investment, and may pay to the State a tax at the rate of twenty cents per year on each one hundred dollars or fraction thereof of the face value of such investment for one or more years not exceeding five, under such regulations as the Comptroller may prescribe, and the Comptroller shall thereupon affix stamps hereinafter provided for, to such investment, which stamps shall be duly signed by the Comptroller or his duly authorized representative and dated as of the date of the payment of such tax.   *   *   *   All such investments shall thereafter be exempt from all taxation in the State or any of the municipalities or local divisions of the State [with certain exceptions not material], for the period of years from the payment of such tax for which such tax shall have been paid and such stamps affixed."

Both of these sections are in article 15, which relates to " tax on investments."   Section 221b is a new section added by chapter 700 of the Laws of 1917 to article 10, which article relates to " taxable transfers," and is as follows:

" § 221-b.   Additional tax on investments in certain cases. Upon every transfer of an investment, as defined in article fifteen of this chapter, taxable under this article, a tax is hereby imposed, in addition to the tax imposed by section two hundred and twenty-one-a, of five per centum of the

appraised inventory value of such investment, unless the tax on such investment as prescribed by article fifteen of this chapter or the tax on a secured debt as defined by former article fifteen of this chapter shall have been paid on such investment or secured debt and stamps affixed for a period including the date of the death of the decedent or unless the personal representatives of decedent are able to prove that a personal property tax was assessed and paid on such investment or secured debt during the period it was held by decedent."

We think the learned surrogate was right in holding as he did that decedent was not taxable under section 331 on these western mortgages. They are not "investments" as defined in section 330. It is only the particular securities there defined that are subject to the stamp tax, and they are bonds, notes, etc., "forming part of a series of similar bonds, notes," etc. The bonds secured by these western mortgages are each individual bonds and none of them formed part of a series. This construction is according to the fair import of the language used.

If, however, the language of section 330 admits of a possible construction which would make these bonds and mortgages investments within its definition, it would be strained construction to be adopted only to effectuate a plain legislative intent. The five per cent additional tax under section 221b is a special as distinguished from a general tax. (*Matter of McPherson*, 104 N. Y. 306, 317.) And the statute imposing it is to be strictly construed in favor of the taxpayer and against the State.

In *Matter of Enston* (113 N. Y. 174) the Collateral Inheritance Act of 1885 (Laws of 1885, chap. 483) was before the court for construction, and in the course of the opinion of Judge ANDREWS he said: "The tax imposed by this act is not a common burden upon all the property or upon the people within the State. It is not a general but a special tax, reaching only to special cases and affecting only a special class of persons. The executors in this case do not, therefore, in any proper sense, claim exemption from a general tax or a common burden. Their claim is that there is no law which imposes such a tax upon the property in their hands as executors. If they were seeking to escape

from general taxation, or to be exempted from a common burden imposed upon the people of the State generally, then the authorities cited by the learned counsel for the people, to the effect that an exemption thus claimed must be clearly made out, would be applicable. But the executors come into court claiming that the special taxation provided for in the law of 1885 is not applicable to them, or the property which they represent. In such a case they have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law."

This doctrine was reaffirmed in *Matter of Vassar* (127 N. Y. 1, 12). (See, also, *Matter of Stewart*, 131 N. Y. 274; *Matter of Fayerweather*, 143 id. 114; *Matter of Harbeck*, 161 id. 211, 217.)

It is not claimed by the State Comptroller that these western mortgages are investments within the definition of that term as given by section 330. But his contention is that section 330 does not define the word " investments " but simply states that such " investments " *shall include* the securities named therein, and does not state that it shall include *only* such securities.

We are unable to adopt this view. We think it clear from the context that the word " include " is here used as synonymous with " comprise " or " comprehend," and that the legislative intent was that only the securities specified in section 330 are to be deemed " investments " within the meaning of that word as used in sections 331 and 221b. Such was manifestly the meaning of this word " include " as used in this same section before its amendment in 1917 to define " secured debts."

If, however, it were possible to hold that these western mortgages were subject to the stamp tax under section 331 because of the fact that they are investments in their nature though not within the definition of that word as used in section 330, it would not follow that the failure to pay the stamp tax would subject the decedent's estate to the five per cent additional transfer tax under section 221b, because by the express terms of the latter section, that tax is imposed

only upon " every transfer of an investment, as defined in article fifteen of this chapter." This means as defined in section 330, for there is no definition in any other section of article 15. Certainly these mortgages are not among the class of investments actually defined in section 330 because the bonds which they secure do not form a part of a series of similar bonds.

As to the two bonds of foreign corporations which were part of a series, we think the learned surrogate was correct in holding that they are subject to the five per cent additional transfer tax under section 221b. The executors conceded that they could not object to this tax but for the fact that the decedent was assessed during the year of his death, and for some years before, by the local assessors of his residence for $20,000 of personal property, and that he paid the tax upon such assessment.

The record shows that decedent's net estate after allowing for deductions for debts, funeral expenses and expenses of administration was $371,588.37. Of this only $52,872.03 consisted of real property.

By section 221b it is provided that investments which would otherwise be subject to a five per cent additional transfer tax shall not be so subject where " the personal representatives of decedent are able to prove that a personal property tax was assessed and paid on such investment or secured debt during the period it was held by decedent."

There is nothing in the record to show that the $20,000 local assessment included these two foreign corporation bonds. If the $98,811.50 of western mortgages were not subject to the stamp tax under section 331, or a five per cent additional transfer tax under section 221b, then they were subject to assessment by the local assessors as personal property of the decedent. In this state of the record we think we would not be justified in holding that the $1,607.47 of corporate bonds were included in the $20,000 assessment for personal property, rather than that amount of the western mortgages or some other item of personal property which decedent had.

We are of opinion, as before stated, that these two corporate bonds are subject to the transfer tax of five per cent under section 221b.

The order of the surrogate should be reversed, and the matter remitted to the surrogate for further disposition by him in accordance herewith, with costs of this appeal to the appellant payable out of the estate.

All concurred.

Order reversed and matter remitted to the surrogate for further disposition by him in accordance with the opinion, with costs to the appellant payable out of the estate.