**CANNON v. NICHOLAS, Collector of Internal Revenue (two cases).**
**Nos. 1289, 1290.**

Circuit Court of Appeals, Tenth Circuit.
Dec. 9, 1935.

Dayton Denious, of Denver, Colo. (Wilbur F. Denious and Hudson Moore, both of Denver, Colo., on the brief), for appellants.

S. E. Blackham, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Norman D. Keller, and J. E. Garvey, Sp. Assts. to the Atty. Gen., and Ivor O. Wingren, Asst. U. S. Atty., and Thomas J. Morrissey, U. S. Atty., both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

To collect income taxes for 1928 due from H. Brown Cannon, the collector seized under warrant of distraint three policies of insurance upon the life of Cannon, and one annuity contract issued to him. The collector then advertised for sale at public auction those policies and the contract, describing them only as "Three life insurance policies issued by the Capitol Life Insurance Company of Denver, Colo., upon the life of H. Brown Cannon as follows: One for the sum of $10,000; one for the sum of $5,000; one for the sum of $2,000; one annuity insurance policy issued by the Travelers Insurance Company of Hartford, Conn., upon the life of H. Brown Cannon for the sum of $25,000."

Before the sale date, these suits were brought to quash the warrant of distraint; the policies were deposited with the court to abide the litigation, and the sale called off. The essential facts were stipulated, and the bills dismissed on their merits.

## No. 1290.

This case involves the annuity contract, and Mr. Cannon is the plaintiff. On September 1, 1928, for a single premium of $25,000, the issuing company agreed to pay Cannon $1,000 a year during his life, and upon his death to pay his executors $25,000 plus a proportion of the current annuity. The cash and loan value of this contract when the levy was made, was $24,375, against which Cannon had borrowed $20,272.34.

There is little room for the argument that this large sum, invested in an annuity, is exempt from taxes; if taxpayers could invest their fortunes in annuities and stand aloof when the tax collector comes around, payment of taxes would be too often a voluntary matter. To collect its revenues, the power of the government over the property of the taxpayer is plenary. State exemption laws, ex proprio vigore, do not apply. Fink v. O'Neil, 106 U. S. 272, 1 S.Ct. 325, 27 L.Ed. 196. Congress has not in the revenue laws, as it did in bankruptcy, recognized state exemption statutes; nor has it exempted either annuity contracts or life insurance policies.

The statutes governing the collection of taxes are broad and comprehensive. By 26 U.S.C.A. § 115 (see 26 U.S.C.A. § 1560) taxes are decreed to be a lien "upon all property and rights to property, whether real or personal" belonging to the taxpayer. By section 116 (see 26 U.S.C.A. § 1580) the collector is authorized to collect by distraint or sale "the goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debt" of the delinquent. By section 117 (see 26 U.S.C.A. § 1582) the collector is authorized to levy "upon all property and rights to property, except such as are exempt by the preceding section, belonging to such person, or on which the [said] lien exists." By section 118 (see 26 U.S.C.A. § 1611) all persons are required on demand of a collector who has or is about to distrain "on any property, or rights of property" to exhibit all books, etc. By section 129 (see 26 U.S.C.A. § 1613) the collector is authorized to "seize and sell any of the property, real or personal (except property exempt from distraint and sale under section 3187 of the Revised Statutes [26 U.S.C.A. § 116, see 26 U.S.C.A. § 1581]), or any right or interest therein." By 26 U.S.C.A. § 1268a

(see 26 U.S.C.A. § 1610 (a, b) any person in possession of "property, or rights to property, subject to distraint, upon which a levy has been made" is required to surrender such property to the collector.

■ An ingenious argument is made that because section 116 (see 26 U.S.C.A. § 1580), specifies "stocks, securities, bank accounts, and evidences of debt," and because "bank accounts" were brought into the statute in 1924, Congress intended to exempt all intangible property except those listed. But the doctrine of expressio unius est exclusio alterius, while at times an aid in construction of doubtful language, does not avail here. In the first place, reading the various sections of the statutes devoted to collection of taxes, it is clear that Congress intended to subject all of a taxpayer's property except that specifically exempted to the payment of taxes. Again, the enumeration here follows the word "including" which has various shades of meaning, sometimes of restriction and sometimes of enlargement.[1] We have no doubt that the word here was used from an excess of caution, that is, to point out certain classes of property which Congress was fearful a collector might overlook. We do not believe, in the light of the sweeping language used throughout these statutes, that Congress intended to limit distraint to tangible property and to the specified classes of intangibles. No reason is apparent why "stocks and securities" should be subject to levy and an annuity contract not. Again, in a true if not a colloquial sense, an annuity contract is an "evidence of debt."

We hold that this annuity contract is subject to taxes and to distraint. The notice of sale given has spent its force, but it is proper to say that the notice given was not specific enough as to the terms of the contract, its surrender value, loans against it, etc., fairly to apprise the public as to what they were invited to bid on. It is possible, as suggested by counsel for appellant, that the full surrender value can be realized without jeopardizing the rights of the government or possibly sacrificing the rights of appellant at a public sale, by compelling the company to pay the balance of the surrender value to the collector under 26 U.S.C.A. § 1268a (see 26 U.S.C.A. § 1610 (a, b).

The order in Number 1290 is affirmed.

## No. 1289.

The appeal in Number 1289 presents a much more difficult question. That suit is by Mrs. Cannon, the beneficiary in two policies issued on the life of Mr. Cannon, one a twenty-year endowment for $2,000, maturing in 1936. By its terms, that sum is to be paid Mrs. Cannon if her husband dies before 1936, otherwise to him. The other is a straight life policy for $10,000 with Mrs. Cannon the beneficiary. Right is reserved in Cannon to revoke and change the beneficiary in both policies.[2] The record does not disclose the loan or cash value of the $2,000 policy, but it must nearly equal the face, for it matures in a few months. The loan or cash value of the $10,000 policy, now in its ninth year, is nearly $7,000.

■ Mrs. Cannon contends that, under the Colorado decisions, she is the owner of these policies, and that her property cannot be subjected to the payment of her husband's taxes. The Supreme Court of the United States, in the Community Property and other cases, has held that state law determines the ownership of property subject to its jurisdiction, and that a wife's property cannot be taken for her husband's taxes. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Hoeper v.

---

[1] Montello Salt Co. v. Utah, 221 U.S. 452, 31 S.Ct. 706, 55 L.Ed. 810, Ann.Cas. 1912D, 633; Calhoun v. Memphis & P. R. Co., 4 Fed.Cas. 1045, No. 2309; Cunningham v. Sizer Steel Corp. (D.C.N.Y.) 1 F.(2d) 337; United States v. Pierce (C.C.A.) 147 F. 199; Sullivan Machinery Co. v. United States (C.C.) 168 F. 561; Decorated Metal Mfg. Co. v. United States, 12 Ct.Cust.App. 140; Achelis v. Musgrove, 212 Ala. 47, 101 So. 670; Fraser v. Bentel, 161 Cal. 390, 119 P. 509, Ann. Cas. 1913B, 1062; Kennedy v. Industrial Accident Commission, 50 Cal.App. 184, 195 P. 267; Jacksonville Terminal Co. v. Blanshard, 77 Fla. 855, 82 So. 300; Wy-

att v. City of Louisville, 206 Ky. 432, 267 S.W. 146; Matter of Goetz, 71 App.Div. 272, 75 N.Y.S. 750; Matter of Sheppard's Estate, 189 App.Div. 370, 179 N.Y.S. 409; People ex rel. Woolworth's Estate v. State Tax Commission, 200 App. Div. 287, 192 N.Y.S. 772; Cooper v. Stinson, 5 Minn. 522 (Gil. 416); Neher v. McCook County, 11 S.D. 422, 78 N.W. 998; Blanck v. Pioneer Mining Co., 93 Wash. 26, 159 P. 1077.

[2] The third policy covered by the notice is for $5,000 and the beneficiary is Cannon's son. That policy is not in suit, but it was deposited with the clerk, apparently to abide the result of this suit.

Tax Commission, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248; Helvering v. City Bank Farmers Trust Company, arguendo, 56 S. Ct. 70, 88 L.Ed. ——.

The Supreme Court has also held, Chase Nat. Bank v. United States, 278 U. S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A. L.R. 388, that many of the legal incidents of ownership are vested in the insured under a policy payable to another upon his death, where the right is reserved in him to revoke the beneficiary, and among those incidents enumerates the power to pledge the policy for a loan and to dispose of the proceeds for his own benefit during his life. Mr. Cannon has the power to borrow substantial sums upon these policies and to use the proceeds for his own benefit, and that without surrendering the right to keep his insurance in force by paying premiums.[3]

Since the notice advertised for sale the entire policies, and not whatever interests therein belonged to the taxpayer, our task is to ascertain whether under Colorado law Mrs. Cannon was vested with any of the incidents of ownership.

In Hendrie & Bolthoff Mfg. Co. v. Platt, 13 Colo.App. 15, 56 P. 209, 211, creditors undertook to reach the proceeds of several policies on the life of their debtor, after his death and after his beneficiary had received the proceeds. Two of the policies had endowment features. The opinion does not state that the insured reserved the right to change the beneficiary. There was then no Colorado statute exempting insurance money from debts. After an exhaustive review of the cases, it was held that creditors could not reach life insurance money, the court saying that the fund arose from the beneficiary's insurable interest in the life of her husband; that it did not exist until death; that public policy required that widows and children should not be left destitute; that "the moment it is issued, its ownership vests in the beneficiary," "the

title thereto had become vested in her," that until the maturity of an endowment policy "her title was as absolute as if the insurance had been upon any other plan."

In National Bank of Commerce v. Appel Clothing Co., 35 Colo. 149, 83 P. 965, 966, 4 L.R.A.(N.S.) 456, 117 Am.St.Rep. 186, a creditor undertook to reach the surrender value of an endowment policy, with right reserved to change the beneficiary, before the maturity of the endowment or the death of the insured. There was no allegation of insolvency, or that the insured was indebted when the policy was issued. Without deciding the rule applicable in such state of the case, the court held that the beneficiary could not be divested of her interest except by the act of the insured, the opinion concluding:

"If the latter should be compelled to surrender these policies to the companies issuing them, and accept the value thereof, the rights of the beneficiaries would be destroyed. The insured may have interests in these policies which a court of equity, if their rights only were involved, might have the power to compel them to apply to the payment of their indebtedness; but, however this may be, a court of equity would not be authorized to exercise this power when thereby the vested rights of third persons would be destroyed, unless it should appear that the conditions existed under which a court of equity, at the instance of a creditor, may annul voluntary arrangements entered into between his debtors and third persons."

In Hill v. Capitol Life Ins. Co., 91 Colo. 300, 14 P.(2d) 1006, the fact situation is not pertinent, but the court held that even where the insured reserved the right to change the beneficiary, the beneficiary had an "interest in the policy" prior to the exercise of the reserved right.

In 1929 a statute was passed which is set out in the margin.[4] The Colorado

3 The policies are not in the record, but it does appear that reserves have accumulated thereon, and such policies ordinarily if not uniformly grant an option to borrow the accumulated reserve without surrendering the policy. While the record is not clear, it may be that Mr. Cannon, in order to borrow on the policy, must either change the beneficiary to his estate, or procure the consent of the beneficiary. But it is conceded that, by changing the beneficiary, he may borrow the stated sum upon the sole security of

the policy and without consent of the beneficiary.

4 "If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his

courts have not yet had occasion to determine whether this statute is one of exemption or one fixing property rights. If the latter, it does not aid here because the policies in question were issued long prior to its enactment, and because it adds nothing to plaintiff's rights under the cited Colorado decisions. The Second Circuit, in a well-reasoned opinion has held an identical statute to be one of exemption. In re Messinger (C.C.A.2) 29 F.(2d) 158, 68 A.L.R. 1205. As such, it is not applicable to federal taxes.

From these decisions it appears that in Colorado a beneficiary has a property interest in a policy of life insurance. But it does not follow that the insured has no interest therein, for two or more persons may own interests in the same property. The Bankruptcy Act provides (§ 70a (5), 11 U.S.C.A. (a) (5) that, unless exempted by state law, Holden v. Stratton, 198 U. S. 202, 212, 25 S.Ct. 656, 659, 49 L.Ed. 1018, the surrender value of any policy on the life of a bankrupt "payable to himself, his estate, or personal representatives" passes to the trustee in bankruptcy unless the bankrupt pays such surrender value to the trustee. In 1917 the question arose whether the surrender value of a policy not payable to the insured or his estate, but with a right to change the beneficiary to himself or his estate, passed to the trustee. Although not passing by virtue of this section, the Supreme Court held that the surrender value passed to the trustee because of his power to change the beneficiary to himself or his estate under 70a (3) 11 U.S.C.A. § 110 (a) (3). The Supreme Court held:

"It might indeed be that it would better fulfill the protection of insurance by considering the proviso alone and literally, regarding the policy at the moment of adjudication, and, if it be not payable then in words to the bankrupt—no matter what rights or powers are reserved by him, no matter what its pecuniary facility and value is to him—to consider that he has no property in it. But we think such construction is untenable. The declaration of subdivision 3 is that 'powers which he might have exercised for his own benefit' 'shall in turn be vested in the trustee,' and there is vested in him as well all property that the bankrupt could transfer or which by judicial process could be subjected to his debts, and especially as to insurance policies which have a cash surrender value payable to himself, his estate or personal representative. It is true the policies in question here are not so payable, but they can be or could have been so payable at his own will and by simple declaration. Under such conditions to hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets and, it might be, a refuge for fraud. And our conclusions would be the same if we regarded the proviso alone.

"This court has been careful to define the interest of bankrupts in the insurance policies they may possess. In Hiscock v. Mertens, 205 U.S. 202, 27 S.Ct. 488, 51 L. Ed. 771, we gave a bankrupt the benefit of the redemption of a policy from the claims of creditors, though a cash surrender value was not provided by it but was recognized by the insurance company. In Burlingham v. Crouse, 228 U.S. 459, 472, 33 S.Ct. 564, 568, 57 L.Ed. 920, 46 L.R.A. (N.S.) 148, we said that it 'was the purpose of Congress to pass to the trustee that sum which was available to the bankrupt at the time of bankruptcy as a cash asset; otherwise to leave to the insured the benefit of his life insurance.' See also Everett v. Judson, 228 U.S. 474, 33 S.Ct. 568, 57 L. Ed. 927, 46 L.R.A.(N.S.) 154." Cohen v. Samuels, 245 U.S. 50, 52, 53, 38 S.Ct. 36, 37, 62 L.Ed. 143.

While constrained to hold that Mrs. Cannon has an interest in these policies not

---

executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person; Provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or in behalf of a creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors, with specifications of the amount claimed." Chapter 113, p. 408, § 1, Laws of Colo.1929.

subject to sale for her husband's taxes, we do not hold that the taxpayer has no interest therein which may not be liable for his taxes. Whether the loan value can be so subjected under 26 U.S.C.A. § 1268a (see 26 U.S.C.A. § 1610 (a, b) or otherwise, leaving to the beneficiary the right to the proceeds upon his death if premiums are paid as provided in the policy, we are not now called upon to decide; nor need we pass upon the question of whether a sale is a proper way to realize upon values in a life insurance policy because the law limits the bidders to those having an insurable interest in the life of the insured. Heusner v. Life Ins. Co., 47 Mo.App. 336; Industrial Loan & Investment Co. v. Missouri State Life Insurance Co. (Mo.App.) 3 S.W.(2d) 1046. The effort to sell the entire policy, including Mrs. Cannon's interest therein as recognized by the Colorado law, should be enjoined.

The order in Number 1289 is reversed.