**UNITED STATES of America, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. 87–0599–BH–M.

United States District Court,
S.D. Alabama, S.D.

June 28, 1988.

Judgement awarded Aug. 10, 1988.

William A. Roberts, Dept. of Justice, Tax Div., Ben Franklin Station, Washington, D.C., Edward J. Vulevich, Jr., Asst. U.S. Atty., Mobile, Ala., for plaintiff.

David C. Hannan, Alan C. Christian, R. Gregory Watts, Mobile, Ala., for defendant.

## MEMORANDUM OPINION AND ORDER

HAND, Chief Judge.

This cause is before the Court on the parties' cross-motions for summary judgment. The facts in this case are undisputed. Plaintiff, the United States of America, brought this action against the defendant, Metropolitan Life Insurance Company (Metropolitan) to enforce a levy. The Government specifically seeks a judgment against Metropolitan under 26 U.S.C. § 6332(c)(1) for the value of certain property which it contends is in the defendant's possession but which has not been surrendered by defendant pursuant to a levy and demand by the Government. The property at issue consists of the cash surrender value of an annuity contract issued by Metropolitan to a delinquent taxpayer, Fitzhugh Lee Jackson, Jr. In addition to the cash surrender value of the annuity contract, the Government seeks interest and costs as provided by the Internal Revenue Code as well as the penalty which may be imposed pursuant to 26 U.S.C. § 6332(c)(2), in the amount of 50% of the foregoing amount, for Metropolitan's failure to honor the levy without reasonable cause. On its part, Metropolitan contends that because the property involves an annuity contract, with certain alternative benefits including death benefits, Metropolitan is not in the possession of any property of the delinquent taxpayer which is subject to levy by the Government. Metropolitan further argues that, absent joinder of the taxpayer/annuitant as a necessary party to this litigation, judgment with regard to the cash surrender value of the annuity contract cannot be entered in favor of the Government.

Upon careful consideration of the parties' respective arguments, the Court con-

cludes for the reasons set forth below that no genuine issues of material fact exist and that the Government's motion for summary judgment is due to be granted. The Court further concludes that the Government is entitled to collect from Metropolitan a penalty imposed pursuant to 26 U.S.C. § 6332(c)(2).

## I. *Undisputed Facts*

In 1975, Fitzhugh Lee Jackson, Jr. (taxpayer) applied to Metropolitan for an annuity contract, specifically a Flexible–Purchase Pension Annuity Contract (annuity contract). Upon receipt of the application and initial purchase payment of $1,500.00 from the taxpayer, Metropolitan issued the annuity contract to the taxpayer with an issue date of December 1, 1975 (Contract No. 753 203 690 AB). The taxpayer's annuity contract has no cash loan value provisions and, therefore, has no cash loan value at any time. The annuity contract provides annuity benefits, death benefits and a cash withdrawal prior to the retirement date of the annuitant, which in this case is December 1, 1989. The cash withdrawal or cash surrender value may be taken in full upon the taxpayer's election to take the cash surrender value and surrender of the annuity contract to Metropolitan. A partial cash withdrawal is also available upon request under certain circumstances as identified in the contract. The contract has no cash surrender value after the aforementioned retirement date. The annuity contract further provides that the contract "may not be transferred, sold, assigned, discounted or pledged as collateral for a loan or as security for the performance of an obligation or for any other purpose." [1]

The cash withdrawal or cash surrender value of the annuity contract as of December 2, 1987 was $19,991.06.

The annual dividend payable under the annuity contract of the taxpayer can be applied only as a paid-up addition or purchase payment, and has been treated as such by Metropolitan during the term of the contract. Taxpayer's annuity contract is a deferred annuity purchased by payments as scheduled on page three of the contract, with the right to make additional purchase payments. Taxpayer made $13,-500.00 of purchase payments and all dividends have been used to purchase a paid-up addition to the annual annuity provided by the contract. There has been no cash withdrawal under the contract for any person, nor any payment of the cash surrender value upon surrender of the contract, nor any request for same other than the Notice of Levy of the Internal Revenue Service (IRS) dated March 6, 1984. Metropolitan responded to the IRS's Notice of Levy on April 6, 1984 by correspondence indicating that Metropolitan was not in possession of any property of the taxpayer which is subject to levy by the IRS.

The notice of levy upon taxpayer's annuity contract was made pursuant to an assessment on February 2, 1979 by a delegate of the Secretary of the Treasury against the taxpayer for federal income taxes and related penalties, and statutory interest thereon, for the years 1970 through 1974. The March 6, 1984 notice of levy sought the collection of taxes and statutory additions thereon as follows:

| Tax Period Ended | Unpaid Balance on Assessment | Statutory Additions | Total |
|---|---|---|---|
| 12/31/70 | $45,876.53 | $22,223.77 | $ 68,100.30 |
| 12/31/71 | 11,716.22 | 7,544.54 | 19,260.76 |
| 12/31/72 | 25,173.89 | 16,630.32 | 41,804.21 |
| 12/31/73 | 8,556.44 | 5,928.27 | 14,485.16 |
| 12/31/74 | 7,302.31 | 4,764.98 | 12,067.29 |
| | | | $155,717.72 |

---

1. The annuity contract further provides that if the annuitant is the owner of the contract and is in the employ of the employer under the pension plan pursuant to which the contract is issued, then the withdrawal is subject to the written consent of such employer. However, there is no evidence in the record to indicate that the annuity contract in question was issued pursuant to an employer' pension plan and thereby subject to the employer's consent.

Certain documents issued by the IRS on December 14, 1987 indicate that, as of April 1, 1987, the taxpayer owed, in taxes, penalties and interest, the sum of $96,726.47 for 1970 and $47,014.09 for 1972.

## II.  *Conclusions of Law*

In this action, the Government contends that Metropolitan refused to surrender upon demand property subject to levy under the Internal Revenue Code, namely the cash surrender value of an annuity contract. Metropolitan, however, essentially contends that the annuity contract is indistinguishable from a life insurance or endowment contract and, therefore, absent an election by the taxpayer to take the cash surrender value, Metropolitan has no property of the taxpayer in its possession which would be subject to summary levy procedures. Consequently, Metropolitan argues that the Government can only reach the cash surrender value of the annuity contract in question by means of a judicial foreclosure action in which the annuitant, the insurance company "and all other appropriate parties were joined." The essential issue before this Court, therefore, is whether the cash surrender value of an annuity contract is in fact property of the taxpayer in the possession of the insurance company which issued the contract.

The controlling law relative to this case has in part been addressed and summarized by the Supreme Court in *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), as follows:

> Section 6321 of the Code, 26 U.S.C. § 6321 [26 U.S.C.S. § 6321], provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Under the succeeding § 6322, the lien generally arises when an assessment is made, and it continues until the taxpayer's liability "is satisfied or becomes unenforceable by reason of lapse of time."

The statutory language "all property and rights to property," appearing in § 6321 (and, as well, in §§ 6331(a) and, essentially, in 6332(a), ...), is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have. See 4 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 111.5.4, p. 111–100 (1981) (Bittker). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States*, 326 U.S. 265, 267, 90 L.Ed. 56, 66 S.Ct. 108 [110] (1945).

A federal tax lien, however, is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes. The Internal Revenue Code provides two principal tools for that purpose. The first is the lien-foreclosure suit. Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The suit is a plenary action in which the court "shall ... adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." § 7403(c). See generally *United States v. Rodgers*, 461 U.S. 677, 680–682, 76 L.Ed.2d 236, 103 S.Ct. 2132 [2135–2137] (1983). The second tool is the collection of the unpaid tax by administrative levy. The levy is a provisional remedy and typically "does not require any judicial intervention." *Id.*, at 682, 76 L.Ed.2d 236, 103 S.Ct. 2132 [at 2137]. The governing statute is § 6331(a). [Footnote reference omitted]. It authorizes collection of the tax by levy which, by § 6331(b), "includes the power of distraint and seizure by any means."

In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily

served pursuant to § 6332(a). This notice gives the IRS the right to all property levied upon, *United States v. Eiland*, 223 F.2d 118, 121 (CA4 1955), and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. *Phelps v. United States*, 421 U.S. 330, 334, 44 L.Ed.2d 201, 95 S.Ct. 1728 [1731] (1975). If the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." § 6332(d). If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal. § 6332(d)(1).

The administrative levy has been aptly described as a "provisional remedy." 4 Bittker, ¶ 111.5.5, at 111–108. In contrast to the lien foreclosure suit, the levy does not determine whether the Government's rights to the seized property are superior to those of other claimants; it, however, does protect the Government against diversion or loss while such claims are being resolved. "The underlying principle" justifying the administrative levy is "the need of the government promptly to secure its revenues." *Phillips v. Commissioner*, 283 U.S. 589, 596, 75 L.Ed. 1289, 51 S.Ct. 608 [611] (1931). "Indeed, one may readily acknowledge that the existence of the levy power is an essential part of our self-assessment tax system," for it "enhances voluntary compliance in the collection of taxes." *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350, 50 L.Ed.2d 530, 97 S.Ct. 619 [627] (1977). "Among the advantages of administrative levy is that it is quick and relatively inexpensive." *United States v. Rodgers*, 461 U.S., at 699, 76 L.Ed.2d 236, 103 S.Ct. 2132 [at 2145].

472 U.S. at 719–721, 105 S.Ct. at 2923–2925. At issue in *National Bank of Commerce* was the IRS's right to administratively levy on two joint bank accounts, each in the names of the delinquent taxpayer and others. The Supreme Court held that, since the taxpayer had the absolute right under state law and under his contract with the bank to withdraw the full amounts on deposit in the joint accounts without notice to his codepositors:

> [the taxpayer's] right to withdraw qualifies as a right to property for purposes of §§ 6331 and 6332. In a levy proceeding, the IRS "steps into the taxpayer's shoes." [citation omitted]. The IRS acquires whatever rights the taxpayer himself possesses. And in such circumstances, where, under state law, a taxpayer has the unrestricted right to withdraw funds from the account, "it is inconceivable that Congress ... intended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer-depositor." [citation and footnote omitted). The taxpayer's right to withdraw is analogous in this sense to the IRS's right to levy on the property and secure the funds.

472 U.S. at 723–24 and 725–25, 105 S.Ct. at 2925–26 and 2926–27.

■ As applied to the case now before this Court, it would appear without question that the cash surrender value of the annuity contract was subject to administrative levy under §§ 6331 and 6332. Metropolitan does not contend, nor could it, that the taxpayer's right to compel Metropolitan to pay the cash surrender value of the annuity contract was restricted under either the terms of the contract or state law.[2] Consequently, the IRS, pursuant to its levy, stepped into the taxpayer's shoes and acquired the right to compel Metropolitan to pay to the Government the cash surrender value of the annuity contract.

Metropolitan takes issue with this obvious conclusion. Simplistically put, Metropolitan reasons as follows: (1) an annuity contract is equivalent in all respects to a life insurance contract; (2) the Govern-

**2.** To the extent Metropolitan contends that taxpayer cannot compel payment without surrender of the contract and that, absent such surrender, Metropolitan might be subject to dual or cumulative liability, such contention is without merit. *See,* 26 U.S.C. § 6332(d) pursuant to which Metropolitan would be discharged of any obligation or liability to the taxpayer/annuitant.

ment, prior to 1966, could only reach a taxpayer's rights in an unmatured life insurance or endowment contract, and therefore an annuity contract, by a judicial foreclosure action; (3) pursuant to § 6332(b), which was enacted in 1966, the Government, in the alternative to judicial foreclosure, was permitted to administratively levy on only the cash loan value of a life insurance policy or an endorsement contract; and (4) inasmuch as § 6332(b) does not expressly mention annuity contracts, it remains settled that the Government may reach the taxpayer's rights in an annuity contract only by a judicial foreclosure action.

Metropolitan predicates its first contention, namely that an annuity contract is equivalent to a life insurance policy, upon the fact that each is a contract issued by an insurance company and that each may contain alternative or even cumulative rights and obligation such as death benefits and cash surrender values. For the reasons discussed more fully below, the cases cited by Metropolitan simply do not support the proposition that these similarities make it more appropriate to equate an annuity contract with a life insurance contract than to equate it with such property as a bank account which is admittedly susceptible to administrative levy.

As to the contention that judicial foreclosure is the only mechanism of levy available to the Government, Metropolitan relies principally on two federal circuit opinions publishes in 1965 and the apparent influence of these opinions on Congress in connection with its amendment of the Internal Revenue Code in 1966. The two cases, *United States v. Mitchell*, 349 F.2d 94 (5th Cir.1965) and *Mutual Life Insurance Co. of New York v. United States*, 343 F.2d 71 (9th Cir.1965), do stand for the proposition that the Government may only reach the cash surrender value or cash loan value of a life insurance policy if it effectuates a judicial foreclosure of the policy. The *Mutual Life* court held that, although the right of the insured taxpayer in an unmatured life insurance policy to demand the cash surrender value constitutes property to which a lien attaches, it does not consti-

tute a present debt owing, and therefore property subject to administrative levy by the Government, because a contract which may be converted into cash at the taxpayer's option is not the equivalent of cash nor of a debt owing, 343 F.2d at 73–74. The *Mitchell* court similarly held that prior to a judgment of foreclosure or an election by the taxpayer to take the cash surrender value of a life insurance policy, an IRS levy can only reach the taxpayer's rights to make various elections and that, only after purchasing taxpayer's rights under the policy at a distraint sale, may the Government make the elections as provided by the policy. 349 F.2d at 106. It is also true that Congress apparently relied on such case law when it proposed the enacted 26 U.S.C. § 6332(b) in 1966. Congress clearly acknowledged the existence of such court rulings when it noted:

> Under present law, when the Government seeks to collect a taxpayer's rights in a life insurance or endowment contract which has not matured, the Government must proceed by means of a foreclosure suit against the taxpayer's total rights in the contract. This is necessary because the courts have held that to permit the Internal Revenue Service to seize the cash loan value of a policy without judicial foreclosure would, in effect, authorize it to alter an existing contractual arrangement between the taxpayer and the insurance company. However, a foreclosure suit has disadvantages both from the standpoint of the Government and the standpoint of the taxpayer. From the Government's point of view, a foreclosure suit is a cumbersome way of collecting the taxpayer's rights in the policy; from the taxpayer's point of view, such a suit is unfortunate because, when successful, it completely eliminates the insurance coverage. This is especially unfortunate if the insured becomes uninsurable between the time the policy is issued and the time of the tax lien foreclosure or if (because of greater age) the premium payments required for a new policy are substantially higher than for the old.

As an alternative procedure to the foreclosure suit, the bill permits the Government to levy against the cash loan value of the policy. This alternative procedure generally is more desirable both from the standpoint of the Government and from the standpoint of the insured. For the Government, this is an easier method of collection than a foreclosure suit. For the taxpayer, this makes it possible to continue the policy in force by transferring it to either a beneficiary or someone else who pays the subsequent premiums and interest on policy loans, including those loans resulting from the Government levy.

1966 U.S.Code Cong. & Ad.News at p. 3739.

Despite what may on the surface be considered rather strong support for Metropolitan's position, this Court questions the continued viability of such precedent because it finds it impossible to reconcile the apparent inconsistency of such precedent with the position more recently articulated by the Supreme Court relative to the Government's levy powers. *See, e.g., National Bank of commerce, supra,* and *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). In each of these cases, the Supreme Court emphasized that once it has been determined that a property interest or a right to property exists sufficient for a federal tax lien to attach, the Government steps into the shoes of the taxpayer and may itself exercise the rights which the taxpayer could exercise. 472 U.S. at 725, 26, 105 S.Ct. at 2927 and 461 U.S. at 691, n. 16, 103 S.Ct. at 2141, n. 16. It is also important to note that in holding that the National Bank of Commerce was liable under the Government's administrative levy to turn over the contents of two joint bank accounts, the Supreme Court relied on *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958), for the following:

In the Bess case, the Court held that a delinquent taxpayer, who had purchased life insurance policies, *did not have "property or rights to property" in the death proceeds of the policies, but that he did have such rights in their cash surrender value.* 357 U.S., at 55–56, 2 L.Ed.2d 1135, 78 S.Ct. 1054 [at 1057–1058]. Thus, the insured's interest in the cash surrender value was subject to the federal tax lien. The fact that "under state law the insured's property right represented by the cash surrender value is not subject to creditors' liens" was irrelevant. *Id.,* at 56–57, 2 L.Ed.2d 1135, 78 S.Ct. 1054 [at 1057–1058]. State law defined the nature of the taxpayer's interest in the property, but the state-law consequences of that definition are of no concern to the operation of the federal tax law.

*National Bank of Commerce, supra,* 472 U.S. at 723, 105 S.Ct. at 2925 (emphasis added). The Supreme Court's present interpretation of the import of *Bess,* therefore, is somewhat at odds with the distinctions which the Fifth Circuit drew of that case in *Mitchell, supra,* 349 F.2d at 101–02.

In addition, the Court is admittedly puzzled by the Fifth Circuit's apparent approval in *Mitchell* of *Cannon v. Nicholas,* 80 F.2d 934 (10th Cir.1935). The Fifth Circuit cited *Cannon* for the proposition that "it [is] better to require that the [life insurance] policy or the policy rights be sold to recover their maximum value, as was done with the annuity contract in *Cannon."* 349 F.2d at 105. This Court is puzzled for the following reasons. The *Cannon* court clearly concluded that "[w]hile constrained to hold that the [taxpayer's wife] has an interest in these [life insurance] policies not subject to sale for her husband's taxes, we do not hold that the taxpayer has no interest thereon which may not be liable for taxes." 80 F.2d at 938–39. The *Cannon* court also held:

We do not believe, in the light of the sweeping language used throughout [the Internal Revenue Code], that Congress intended to limit distraint to tangible property and to the specified classes of intangibles. No reason is apparent why "stocks and securities" [and bank accounts] should be *subject to levy* and an annuity contract not. Again, in a true if not a colloquial sense, *an annuity contract is an "evidence of debt."*

80 F.2d at 936 (emphasis added).[3] In contrast to the principles advanced in *Cannon,* the Fifth Circuit took the position in *Mitchell* that the taxpayer had no property interest in the cash surrender value until he actually exercised his right to take such. These two cases, therefore, seem considerably at odds with each other and only *Cannon* seems consistent with the present view of the Supreme Court.

Finally, the Court finds unpersuasive Metropolitan's effort to distinguish the *Cannon* decision on the ground that it involved suits by the taxpayer "to quash the warrant of distraint" and not suits to levy against the insurance company for property of the taxpayer in its possession. The critical issue in the case at bar is whether the taxpayer has a property interest in the cash surrender value of an annuity contract issued by an insurance company, an issue which is confirmed in *Cannon.* The fact that in *Cannon* the Government attempted to sell the entire annuity contract and its methods of effectuating the sale were found wanting by the Court, simply does not support the proposition that to reach the cash surrender value of an annuity contract, the Government must in all cases bring a judicial foreclosure action. *See also, First Federal Savings and Loan Association of Pittsburgh v. Goldman,* 644 F.Supp. 101 (W.D.Pa.1986) (administrative levy of individual retirement accounts held lawful); *United States v. Southwestern Life Insurance Co.,* 526 F.Supp. 62 (N.D.Tex.1981) (the annuity contracts in question were held to be property belonging to the taxpayers under § 6331 of the Internal Revenue Code and, therefore, subject to levy).

In view of the above, the Court need not address Metropolitan's contentions relative to the unavailability of 26 U.S.C. § 6332(b). It is simply irrelevant that § 6332(b) was enacted in 1966 for the purpose of providing an alternate mechanism by which the Government may levy upon the cash loan values of life insurance and endowment contracts. What is relevant is that the cash surrender value of the annuity contract in question clearly constitutes property of the taxpayer in Metropolitan's possession and that such property is subject to administrative levy.

■ As to the propriety of imposing the penalty authorized by § 6332(c)(2), the Court concludes that Metropolitan's refusal to surrender the cash surrender value of taxpayer's annuity contract was without reasonable cause. Metropolitan's contention that it was not in possession of taxpayer's property is clearly contradicted by recent Supreme Court precedent.

## CONCLUSION

For the reasons set forth above, the Court concludes that the cash surrender value of the annuity contract in question constitutes property of the delinquent taxpayer in Metropolitan's possession which is subject to administrative levy and that Metropolitan's refusal to honor the levy was without reasonable cause. Consequently, the Government is entitled to judgment as a matter of law, while Metropolitan is not.

It is, therefore, ORDERED that the Government's motion for summary judgment be and is hereby GRANTED while Metropolitan's motion be and is hereby DENIED.

Although the parties have agreed that no genuine issues of material fact exist, the Court is unable at this juncture to enter a separate judgment in favor of the Government because the record does not reflect the cash surrender value as to which the Government is presently entitled. Consequently, the parties are hereby ORDERED to file, on or before July 22, 1988, either a joint stipulation setting forth the cash surrender value as to which the Government is entitled pursuant to this memorandum opinion or such other affidavit or documentary evidence as will establish the same.

---

**3.** The Tenth Circuit, in specific reference to annuity contracts, expressed its concern that "if taxpayers could invest their fortunes in annuities and stand aloof when the tax collector comes around, payments of taxes would be too often a voluntary matter." *Cannon v. Nichols,* 80 F.2d 934–35 (10th Cir.1935). Thus, the Tenth Circuit concluded that "[to] collect its revenues, the power of the Government over the property of the taxpayer is plenary." *Id.*

Upon receipt of this submission by the parties, the Court shall prepare and enter the appropriate judgment in this case.