THE LIBERTY STORAGE AND WAREHOUSE COMPANY, Judgment Creditor, *v.* PRESCOTT VAN WYCK, Judgment Debtor.

City Court of New York, Special Term, New York County, November 29, 1937.

*Gerald S. Schwartz*, for the Liberty Storage and Warehouse Company.

*White & Case*, for the Bankers Trust Company.

*Mitchell, Taylor, Capron & Marsh*, for the City Bank Farmers Trust Company.

*Praeger, Meister & Bokat*, for Melville Praeger.

*Abraham Greenberg*, for Prescott Van Wyck.

*Eastman & Fay*, for William Frutig, Inc.

*Kaner & Kaner*, for Pedro Matamoras.

*Jay A. Gilman*, for Edward Mario Gallo.

BYRNES, J. There are before the court two motions made by the Liberty Storage and Warehouse Company, a judgment creditor of Prescott Van Wyck, judgment debtor, for directory orders against the Bankers Trust Company of New York and the City Bank Farmers Trust Company pursuant to section 794 of the Civil Practice Act and also for " such other, further and different relief * * * as to this court may seem just and proper in the premises."

The debtor has entered a general appearance upon the motions, and both trust companies oppose the motions.

Careful consideration of the voluminous affidavits and exhibits establishes that there are no facts in dispute, and only questions of law remain for determination.

The first and paramount question to be considered is the legal effect of two trust indentures executed by the debtor as settlor to the respective trust companies aforesaid as trustees. By these instruments, and modifications thereof, executed before the entry of the judgment herein and seemingly before the obligation upon which it is based was incurred, Mr. Van Wyck transferred to each of the trust companies securities having a value, in the case of each separate trust, of upwards of $80,000 and possibly closer to $100,000. For present purposes it is sufficient to indicate these approximate amounts, and the court does not, therefore, undertake to determine more exactly the value of the corpus of the two trusts. The annual income from each trust amounts to approximately $3,000. Here, again, it is unnecessary to state the exact amounts.

The provisions of the trusts will be briefly summarized without reference to features thereof, which need not be here considered. It was provided that until 1943 the income must be paid to the settlor, and that the settlor might also withdraw a portion of the principal of each trust not exceeding $5,000 in any one calendar year upon the written consent of either the settlor's sister or either one of two of his uncles.

It may be said at this point that the apparant purpose of the trusts was to guard the settlor against his own improvidence; that the settlor undertook to carve out of his own estate for his own benefit two spendthrift trusts. These trusts provided that the entire unexpended principal should revert to the settlor in 1943 provided that he be then alive. In the event of his prior death, all but twenty-five per cent of each trust is to be distributed among certain designated remaindermen, all relatives of the settlor. As to twenty-five per cent of each trust, the settlor directed that it be paid by the respective trustees " to such persons and in such proportions as the settlor shall by his last will and testament designate and appoint.'' It was further provided that in the event of the settlor's failure to exercise the power of appointment by will, the aforesaid twenty-five per cent should be distributed with the remaining seventy-five per cent to the remaindermen named in each trust indenture. The settlor specifically surrendered the right of revoking the trusts at any time prior to their expiration in 1943, at which time, as above stated, the unexpended portion

of the corpus of each trust is to revert to the settlor, provided he be then living.

At this time the settlor is alive.

So far as the income from the trusts is concerned, this is expressly reserved for the sole use of the settlor, and there can be no question that, as to the income, the trusts are void as against creditors of the settlor. As the income, however, is heavily incumbered by various assignments and liens, the court cannot summarily determine the validity of these assignments and liens, and may not, therefore, summarily direct the payment of the income to this judgment creditor.

The court adheres to the opinion that, at least as to the portion of the corpus of each trust amounting to twenty-five per cent thereof, with respect to which the settlor reserved the power of appointment by will, the trusts are wholly void as against creditors. It is unnecessary to decide, for reasons hereinafter indicated, whether the remaining seventy-five per cent is also void, and the court will confine itself to a consideration of the legal right of this judgment creditor to satisfy this judgment out of such twenty-five per cent of the corpus of either trust.

Section 34 of the Personal Property Law provides: " A transfer of personal property, made in trust for the use of the person making it, is void as against the existing or subsequent creditors of such person."

The trustees contend that as there is a possibility that the settlor may not survive until 1943 and may fail to exercise the reserved power of appointment by will, certain designated remaindermen would then take the unexpended corpus of the trusts, and that these remaindermen have rights of which they are not to be deprived by the application of such corpus to the payment of this judgment. A similar situation was considered by Mr. Justice SHIENTAG in *City Bank Farmers Trust Co.* v. *Miller* (163 Misc. 459). The deceased, Marilyn Miller O'Brien, had created an *inter vivos* trust in its pertinent provisions very much like the trusts under consideration here. In that trust, as in the trusts at bar, the settlor reserved a life interest. The trustee was required to pay to the settlor $500 per week; she reserved no power of revocation and, unlike the trusts at bar, there was no provision that the corpus of the trust should revert to the settlor during her lifetime. Such trust indenture further provided that upon the settlor's death " the trustee shal sell any securities remaining as part of the trust estate and shall distribute the proceeds thereof together with the remaining principal and income in the trust estate as the settlor shall by her last will and testament appoint, and in default of such appointment

to the person or persons to whom, and in the shares and proportions in which, the administrator of the settlor would have been required to pay the same pursuant to the laws of the State of New York then in force had the settlor died intestate and domiciled in the State of New York at the time of her death."

Upon the settlor's death the question arose whether a will made by her was intended to apply to the corpus of the trust. Mr. Justice SHIENTAG held that the settlor had by such will effectually exercised her power of appointment under the trust indenture.

" The settlor of the trust used words effectual to create remainder interests in the persons who under the law would have been her distributees in the event of intestacy. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Guaranty Trust Co.* v. *Harris*, 267 id. 1; *Schoellkopf* v. *Marine Trust Co.*, Id. 358.) "

Nevertheless, the learned court squarely held that as against creditors the trust was absolutely void. It was said: " In the present case the life interest has come to an end and the creditors seek to reach the corpus of the trust. In *Young* v. *Heermans* (66 N. Y. 374) a trust deed conveyed real and personal property to the trustee to pay over the income to the settlor for life. The remainder was to be distributed in accordance with a supplementary writing to be thereafter executed, or in default of such writing to the settlor's heirs. The trust was attacked by a creditor of the settlor and held void in its entirety as against the claims of subsequent as well as existing creditors. The great weight of authority is in accord with this view. (*Nolan* v. *Nolan*, 218 Penn. St. 135; 67 A. 52; *Jamison* v. *Mississippi Valley Trust Co.*, 207 S. W. 788; *Menken* v. *Brinkley*, 94 Tenn. 721; 37 S. W. 92; 1 Bogert, Trusts and Trustees, [1935] § 224; Griswold, Spend-thrift Trusts Created in Whole or in Part for the Benefit of the Settlor, [1930] 44 Harv. Law Rev. 203, 207; Restatement of the Law of Trusts, [1935] § 156, comment c. Contra, *Crawford* v. *Langmaid*, 171 Mass. 309; 50 N. E. 606; *Mercantile Trust Co.* v. *Bergdorf & Goodman Co.*, 167 Md. 158; 173 U. S. 1; and see note 93 A. L. R. 1211, discussing the authorities on both sides.) "

The court also indicated that the settlor's reservation of a general power to appoint by will was " another ground for holding that the creditors are entitled to satisfy their claims from the corpus of the trust."

It is true also that the learned justice made the following direction: " The general estate is to be first exhausted and only then may the executor demand enough of the trust fund to satisfy the unpaid claims of creditors."

However, in the case at bar it appears that the judgment creditor has no means of satisfying its judgment except out of the trusts in question. An execution issued by this judgment creditor against this debtor's property was returned unsatisfied and it is not contended that the debtor has any property not embraced within the two trusts.

To the same effect as the cited case is *Matter of Blackinton* (153 Misc. 580).

The court having reached the conclusion in the case at bar that at least twenty-five per cent of the corpus of each trust is void as against judgment creditors, the next question to be considered is one of procedure.

The court was originally of the opinion that a directory order under section 794 of the Civil Practice Act might be made, directing the respondent trust companies to pay the judgment out of the void portion of the corpus of the respective trusts. The court felt that, broadly read, section 794 of the Civil Practice Act afforded this judgment creditor a remedy in the instant situation and cited in support of that view *Matter of Smith* (36 F. [2d] 697). However, section 794 of the Civil Practice Act refers specifically only to an " indebtedness " by the third party to the judgment debtor. The respondent banks contend that they are not indebted to the judgment debtor, that they are his trustees. Upon reconsideration, the court has reached the conclusion that the judgment creditor's more appropriate remedy is under section 796 of the Civil Practice Act. Under that statute the court may direct property or money " in the possession or under the control of another person," to be delivered or paid to a sheriff if the debtor's right to the possession thereof " is not substantially disputed." It seems to the court that the respondent banks hold in their possession property to which this creditor undeniably and indisputably may have recourse for the purpose of satisfying this judgment. So far as this creditor is concerned, it is as if the debtor had never executed the trust indentures. So far as this creditor is concerned, the property in the possession of the respondent banks under and by virtue of the trust indentures (or at least the void twenty-five per cent thereof) is still the property of the debtor. As to this creditor the trusts are not merely voidable. They are, in the language of section 34 of the Personal Property Law, " void," and the creditor may, therefore, disregard the trusts and resort directly to the property embraced in the trust agreements.

There is no doubt that if this judgment creditor should bring an action in equity to reach the trust estates there could be no defense thereto, that the creditor would then be allowed to satisfy

its judgment out of the trust property. The court should not unnecessarily compel the parties to suffer the expense and delay of such a suit, if it can be avoided, bearing in mind also the cost to the community which the maintenance of such a suit would entail. No useful purpose will be served by requiring the creditor to institute a suit the result of which is inevitable if the same result can be reached by means of a summary proceeding under section 796 of the Civil Practice Act.

The judgment creditor's rights are not merely of an equitable nature. It has, in the opinion of the court, a legal right to treat the debtor's property in the hands of the trustees by virtue of the trust indentures as if such property still belonged wholly to the debtor for, in so far as the judgment creditor is concerned, the trust indentures are void and to be, therefore, disregarded. As pointed out in *Matter of Blackinton* (*supra*, at p. 582): " From the view point of this creditor there is no difference in right of resort to her assets between those which are nominally called estate assets (that is, the assets of the estate of the deceased debtor) and those described as trust property."

Indeed, a judgment creditor seeking to reach a debtor's property fraudulently conveyed may disregard the conveyance and levy execution upon the property thus conveyed. (Debtor and Creditor Law, § 278, subd. b.) How much greater should be the rights of a judgment creditor with respect to property held by a trustee under a trust arrangement which is absolutely void against creditors. (See, also, *Jackson ex dem. Livingston* v. *Bateman*, 2 Wend. 570.)

The respondent banks contend that since the remaindermen, that is, the individuals who will take the aforesaid twenty-five per cent of the corpus of the two trusts if the settlor should die before 1943 without having exercised the power of appointment by will, and who will also take the remaining seventy-five per cent if the settlor dies before 1943, are not parties to this proceeding, the court cannot now make an order affecting the remainder interests of the said individuals. This contention is answered in *Jackson* v. *Tallmadge* (246 N. Y. 133), in which case (at pp. 138, 139) it was said by Cardozo, Ch. J.: " A point is now made, though without plea of defect of parties or even objection at the trial, that the son should have been joined as a defendant, and that no decree may be pronounced without him (Civ. Prac. Act, § 193). There is no question at issue between trustee and beneficiaries or between the beneficiaries themselves (*Matter of Straut*, 126 N. Y. 201, 211, 212). The question is between the trustee and a creditor, a stranger to the trust, who insists that the title to the fund is subject to his lien.

In a suit for such relief, the trustee represents the beneficiaries, and defends in their behalf (*Matter of Straut, supra; Sweet* v. *Parker*, 22 N. J. Eq. 453, 455, 456; *Tucker* v. *Zimmerman*, 61 Ga. 599; *Vetterlein* v. *Barnes*, 124 U. S. 169, 172; Pomeroy, Remedies & Remedial Rights, § 357). 'Where the complaint claims in opposition to the assignment or deed of trust, and seeks to set the same aside on the ground that it is fraudulent and void, he is at liberty to proceed against the fraudulent assignee or trustee, who is the holder of the legal estate of the property, without joining the *cestui que trust* ' (*Rogers* v. *Rogers*, 3 Paige, 379, 380)."

One further matter remains to be considered. As hereinabove indicated, there are various assignments by the judgment debtor of portions of the income and of the corpus of the two trusts and there are in addition various liens thereon. However, even if due allowance is made for such assignments and liens, the validity of which need not be here considered, and even if such assignments and liens be conceded to be valid and to be prior in right to the judgment herein, nevertheless it is clear that the void twenty-five per cent of the corpus of either trust, after making full allowance for all other liens and assignments, is more than sufficient in amount to satisfy in full the judgment herein, so that if payment of such judgment be directed, no possible harm can come to any such assignees or lienors, for there will be much more than enough left over to pay them in full.

Accordingly, the motions of the judgment creditor, the Liberty Storage and Warehouse Company, are granted. Each of the two respondent banks is directed to deliver to the sheriff of New York county sufficient securities or money out of the portion of the corpus of the trusts here declared void, or in part out of the income, if there be any clear surplus of income not applicable to the payment of assignments or other liens, to satisfy the judgment of the creditor, the Liberty Storage and Warehouse Company, in the sum of $1,354.86, together with accrued interest thereon.

As supplementary proceedings are equitable in their nature, the court may make a proper equitable direction. It seems equitable in this case that each of the two trust companies deliver enough securities or cash or both to satisfy one-half of the judgment, and the order to be entered shall provide accordingly. This relief is granted under the provisions of the orders to show cause obtained by the Liberty Storage and Warehouse Company for the grant of " such other further and different relief * * * as to this court may seem just and proper in the premises."

There is also before the court a motion by one Melville Praeger, an alleged assignee of a portion of the income of both trusts, to

vacate the injunctive provisions of the third-party subpoenas issued by the judgment creditor, the Liberty Storage and Warehouse Company, which provisions were included in such subpoenas by virtue of section 781 of the Civil Practice Act. This motion is denied. The court will not pass upon the validity of the alleged assignments to the said Praeger. The relief sought by him is unnecessary in any event, for after the Liberty Storage and Warehouse Company has been paid pursuant to the provisions of the order to be made herein, the injunctive provisions of these subpoenas will no longer be effective. The judgment of the creditor, the Liberty Storage and Warehouse Company, is not in any event to be satisfied out of the income allegedly assigned to Mr. Praeger, but out of other portions of the trusts. The said Praeger, therefore, is in no way prejudiced or harmed. The court cannot, however, direct the trust companies to make any payment to Mr. Praeger. This court has no authority here to direct a payment to an assignee of the judgment debtor. Such an order is not within the scope of supplementary proceedings. An assignee of a judgment debtor must seek some other remedy if he would enforce payment by a third party.

There are also two other judgment creditors, William Frutig, Inc., and Pedro Matamoras, who served upon the two banks third-party subpoenas containing similar injunctive provisions. The alleged assignee, Mr. Praeger, moves also to vacate these subpoenas. These motions are also denied. It is doubtful whether such subpoenas will interfere with any rights of Praeger. However, if the said William Frutig, Inc., and the said Mr. Matamoras do not within one month from date of the entry of the order to be made herein institute and thereafter diligently prosecute a suitable action or proceeding to determine their respective rights in the premises, and if the continued subsistence of their subpoenas should then prevent the said Mr. Praeger from enforcing his alleged assignment, he may thereupon renew his motions against the judgment creditors William Frutig, Inc., and Pedro Matamoras.

The foregoing memorandum is intended to supersede the memorandum of November 5, 1937.

Settle order on notice to the attorney for the judgment debtor, to the attorneys for both trustees, to the attorney for Mr. Praeger and to all other parties to the respective motions.