In the Matter of the Estate of MURRAY L. BROWN, Deceased. JAMES L. BROWN, Appellant; MANUFACTURERS HANOVER TRUST COMPANY, as Executor, Respondent.

Second Department, April 9, 1973.

276

*Henry A. Spelman* for appellant.

*Kelley Drye Warren Clark Carr & Ellis* (*Thomas R. Cosgrove* and *Richard J. Concannon* of counsel), for respondent.

SHAPIRO, J.   The learned Surrogate in the decree under review and in a comprehensive opinion (*Matter of Brown,* 68 Misc 2d 986) approved the rejection by the executor of the claims of the objectant-appellant and dismissed the latter's objections to the account.   We disagree, in part, with that determination.

The objector-appellant, James L. Brown, is the only child of the testator's marriage to Muriel Brown (Muriel).   He was born on January 29, 1934.   The testator was then the donee of a testamentary power of appointment in each of two trusts. The first power of appointment was created under the will of his mother.   The second power of appointment was created by the testator himself by an *inter vivos* trust indenture dated August 9, 1927.

On February 3, 1942 Muriel and the testator entered into a separation agreement which, *inter alia*, provided that the testator would pay Muriel $100 per month for the support of the objectant until he would become 21 years of age.   The testator never made any of those payments.   On May 25, 1942 the testator and Muriel were divorced and they both subsequently remarried. On November 9, 1943 Muriel obtained a judgment against the testator for unpaid monthly installments due under the 1942 agreement.   To dispose of the judgment and in order to amicably settle and adjust their differences, they entered into an agreement on February 18, 1944, which was joined in by their respective spouses, and which, among other things, provided that

Muriel and her husband, Herman Maier, would hold the testator "harmless from making any further payments of $100.00 per month" under the 1942 agreement; that Herman Maier would adopt the objectant; and that the testator would exercise his powers of appointment in both of the above-mentioned trusts so as to irrevocably procure for his son, the objectant, a share of the principal thereof equal to that received by any of the testator's children by his later marriage.[1] Simultaneously therewith the testator executed a will exercising his general testamentary powers of appointment under both trusts in accordance with his obligation under the 1944 agreement. On September 2, 1964, however, the testator, by a new will, revoked all prior wills and exercised his powers of testamentary appointment in both trusts *in favor of his estate.* That will was admitted to probate on October 2, 1968 and in it he also left his entire estate to his second wife, Frances, and his daughter by his second marriage.

The trust assets which were thus transferred to the testator's estate by the 1964 will were worth $129,385.58 as to the *inter vivos* trust and $15,186.35 as to the trust created under the will of the testator's mother. The *inter vivos* trust established by the testator was created by a transfer of assets totaling $75,000 to a bank trustee and two named individuals and provided that the income therefrom be paid to the testator in equal monthly installments and that upon his death the trustees pay the principal and any accumulated and unpaid income "to those persons whom the 'Grantor' shall, by his last will and testament, or instrument in the nature thereof, designate and appoint."

When the executor named in the 1964 will applied for judicial settlement of its account for a period ending August 7, 1970, the objectant opposed the application on the ground that the executor's rejection of his claim to one third of the property received by the executor was improper. The Surrogate approved the executor's rejection of the objectant's claims and dismissed his objections to the account on the authority of EPTL 10–5.3, *Farmer's Loan & Trust Co.* v. *Mortimer* (219 N. Y. 290) and *Kent* v. *Thornton* (179 Misc. 593, affd. 265 App. Div. 904), which he read as determining that a donee of a testamentary power of appointment cannot enter into a valid *contract* to make an appointment under his will. He ruled, therefore, that the contract under which the testator had agreed to exercise his power of appointment under the two trusts was unenforceable. EPTL 10–5.3 provides: "(a) The donee of a power of appointment which is not presently exercisable, or of a postponed power

1. In view of subsequent events, that turned out to be a one-third share.

which has not become exercisable, cannot contract to make an appointment. Such a contract, if made, cannot be the basis of an action for specific performance or damages ''.

A practice commentary on this provision by Judge I. Leo Glasser (McKinney's Cons. Laws of N. Y., Book 17B, EPTL 6-1.1 to 10-10.8, pocket part), in explaining the meaning thereof, says: '' If the power is testamentary, it is exercisable only by a written will of the donee (EPTL 10-3.3) and a will in its very nature is ambulatory. The exercise of the power in such a case is intended to represent the final judgment of the donee. Until the moment of his death, he has the right to appoint the property as he deems best. ' *To permit him to bargain that right away would be to defeat the purpose of the donor. The testamentary power cannot be exercised by force of a contract to make a will, for such a contract, specifically performed under compulsion of the court becomes the equivalent of a grant* ' [*sic*]. (Farmers' Loan & Trust Co. v. Mortimer, supra) '' (emphasis supplied).

But in relying upon the *Farmers' Loan & Trust Co.* case (*supra*) for his broad and all inclusive interpretation of EPTL 10-5.3, Judge Glasser was not discussing a fact pattern in which the donee of the power of appointment is also the donor. In such a case there is no bargaining away of the right of appointment which the donor manifested that the donee have until the moment of his death for, since the donor and the donee are one and the same, his intention, far from being frustrated, is being observed to the very letter.

That is the case with respect to the *inter vivos* trust created by the testator here. Since the power of appointment was reserved by the creator of the trust to himself, can it be seriously contended that his purposeful action as donee in contracting to exercise the power in the objectant's behalf was at the same time defeating his intent as the donor of the power?

Clearly a literal application of subdivision (a) of EPTL 10-5.3 to the fact pattern here would serve only to make it a device to defeat a property owner's legal duty to make his property available for payment of his obligations. Such a wooden interpretation of the statute would truly have an unconscionable effect here where the testator, who had obtained a release of his legal obligation on a judgment for unpaid overdue support payments of $100 per month and from any future obligation to support his son by agreeing to secure to the objectant, his son, a fair share (equal to that received by any other child the testator might leave) and executed a will to that effect, could nevertheless deny that son any share in the principal of the

trusts in question merely by executing a new will in which he exercised his testamentary powers of appointment over the trusts solely in favor of his estate and in which new will he left all his assets primarily to his second wife and the daughter of his second marriage.

To look at the matter from another viewpoint, the objectant here clearly qualifies as a creditor-third-party-beneficiary under the 1944 agreement betweeen the testator and his mother and her second husband, his adoptive father (*Matter of Granwell*, 20 N Y 2d 91; *Forman* v. *Forman*, 17 N Y 2d 274; *Kendall* v. *Kendall* [*No. 2*], 200 App. Div. 706). Although the term " creditor " used in EPTL 10–7.4 (subd. [a], par. [1]) is not defined in that statute, it is defined in section 270 of the Debtor and Creditor Law as " a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." EPTL 10–7.4 (subd. [a], par. [1]) is relevant because it deals with the rights of creditors of a donee of a general power of appointment not presently exercisable and provides:

" (a) Property covered by a general power of appointment which, when created, is not presently exercisable is subject to the payment of the claims of creditors of the donee, his estate and the expenses of administering his estate, only:

" (1) If the power was created by the donee in favor of himself ".

The apparent conflict between the foregoing provision and the provision of EPTL 10–5.3 which bars the donee of a testamentary power of appointment (a power not presently exercisable) from contracting to make an appointment is seemingly resolved by Judge GLASSER in his practice commentary on EPTL 10–7.4 (McKinney's Cons. Laws of N. Y., Book 17B, EPTL 6–1.1 to 10–10.8, pocket part). He there says: " There are two exceptions to the general rule [that creditors of a donee of a general power which is not presently exercisable cannot reach the appointive power]. Sub-paragraph (a)(1) permits the creditors of the donee of a general power to reach the appointive property, whether the power is testamentary or postponed, regardless of and whether or not the power is exercised, if the power was created by the donee in favor of himself. Most American cases hold that where a person creates a life interest together with a general testamentary power in himself, his creditors can reach not only his life interest but also the future interest over which he has a testamentary power. See 93 A.L.R. 1211; Simes and Smith, The Law of Future Interests (2d ed. 1956) § 944; 5 American Law of Property § 23.18; 3 Powell on Real Property

par. 389; Restatement, Property (1948 Supp.) § 328 '' (bracketed matter supplied).

Thus this authoritative commentator, although not referring to it by number, takes the position that the ban of EPTL 10–5.3 on a donee's power to contract away his testamentary power of appointment does not extend to one who creates such a power in favor of himself. This is consistent with his view that EPTL 10–5.3 stems from *Farmers' Loan & Trust Co.* v. *Mortimer* (219 N. Y. 290, *supra*), where the donor of the power was the donee's mother and where the court held that to permit the donee to bargain away the right to exercise the testamentary power would defeat the purpose of the *donor* of the power. As we have pointed out, that is not the case where the donor of the power and the donee are one and the same person.

It is our conclusion, therefore, that as to the *inter vivos* trust created by the testator for his own benefit (and in which of course he was both donor and donee) the contract under which the objectant claims is valid and enforceable and the objectant is entitled to one third thereof, in accordance with the provisions of the 1944 agreement between the testator and the objectant's mother, the testator's first wife, and their respective second spouses.

EPTL 10–5.3 does, however, operate to bar enforcement of that part of the 1944 agreement relating to the trust set up under the testator's mother's will for the benefit of the testator during his life, since otherwise her wish to reserve for him a power of appointment, until his death, of the property she was leaving in trust would be nullified.

Since we hold that the 1944 agreement is enforceable as to the principal of the *inter vivos* trust, the objectant's alternative claim for the value of the total monthly payments of $100 the testator would have had to make from February, 1942 until the objectant reached the age of 21 years may be disregarded.[2]

Accordingly, the decree appealed from should be reversed to the extent that it is inconsistent with the foregoing views, on the law, with costs to both parties to the appeal, payable out of the estate, and the proceeding remanded to the Surrogate's Court, Queens County, for proceedings consistent with these views. The appeal was in fact limited by appellant's brief to

2. We have not considered the possible applicability of EPTL 10–9.2, because that issue was neither raised nor briefed by the parties. Even if it were applicable (and we express no opinion on that question), it would have little effect on the decision here since it would, at most, alter the result only with respect to one third of the small trust fund established by the will of the testator's mother.

the portions of the decree which are being reversed and this limited reversal in effect requires the striking of all the decretal paragraphs of the decree except the third, which settled the account, and the fifth, which made an award for the services of the executor's attorneys.

RABIN, P. J., HOPKINS and MARTUSCELLO, JJ., concur with SHAPIRO, J.; MUNDER, J., dissents and votes to affirm the decree insofar as appealed from.

Decree reversed insofar as appealed from, on the law, with costs to both parties to the appeal, payable out of the estate, and proceeding remanded to the Surrogate's Court, Queens County, for proceedings consistent with the opinion rendered herewith.