UNITED STATES of America, Appellant,

v.

Wanda Lee RITTER, as Administratrix, Estate of Don McClintock Ritter, Jr., Deceased, as Guardian of William John Ritter, Deborah Kay Ritter, Charles Lloyd Ritter, III, and Mark Ritter, and Individually, William John Ritter, Deborah Kay Ritter, Charles Lloyd Ritter, III, Mark Ritter, Individually as the five heirs at law and next of kin of Don McClintock Ritter, Jr., Deceased, William R. Ritter, Individually, and First Huntington National Bank, as trustee u/i dated July 6, 1955 made by them and Mildred S. Ritter, Lloyd Ritter, Jr., Don McClintock Ritter, Sr., and Don McClintock Ritter, Jr., and Mildred S. Ritter, Lloyd Ritter, Jr., and Don McClintock Ritter, Sr., Appellees.

No. 76–1867.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 15, 1977.

Decided July 21, 1977.

Carolyn R. Just, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Robert A. Bernstein, Attys., Tax Div., Dept. of Justice, Washington, D. C., John A. Field, III, U. S. Atty., Robert B. Allen, Asst. U. S. Atty., Charleston, W. Va., on brief), for appellant.

Charles E. Heilmann, Huntington, W. Va. (Robert H. Burford, Beckett, Burford & James, Huntington, W. Va., on brief), for appellees.

Before CRAVEN * and WIDENER, Circuit Judges, and WILLIAMS, District Judge.**

CRAVEN, Circuit Judge:

In the district court, the United States sought to foreclose tax liens which encumber personalty allegedly belonging to the deceased taxpayer's estate. The district court entered summary judgment against the United States, concluding that the property in question was not an asset of the estate since it had passed directly to the taxpayer's heirs. We do not regard the court's conclusion as a sufficient warrant for its result; and, for the reasons below, we reverse.

### I.

Upon the death of his grandmother, the taxpayer, Don McClintock Ritter, Jr., stood to receive outright 1/10th of the corpus of a testamentary trust previously created by his grandfather—with 3/10th thereof going to his father and to each of two uncles. On July 6, 1955, however, the four remaindermen assigned their future interests to a 20-year inter vivos trust, to commence upon the grandmother's death. (She died in 1961.) Under the trust agreement (Agreement), each settlor was to be an income beneficiary in proportion to his original contribution of corpus. They expressly reserved the right to revoke the trust at any time by the unanimous consent of the surviving settlors, if any. Furthermore, it was provided that if any settlor should die before the expiration date of the trust, his share of the income and corpus would be distributed to those entitled thereto under his will or otherwise under the West Virginia laws of descent and distribution—but only "as and when it is due" under the Agreement.

The taxpayer died intestate on October 29, 1966, having collected his current income from the trust. After his death, the taxpayer was assessed $69,777.80 in delinquent taxes, plus penalties and interest, because he had failed to file tax returns for the four years 1961 to 1965. (The assessments were made on the 3rd and 17th of May, 1968.) When the administratrix refused to pay the taxes assessed against her intestate, the Government sought to reduce the assessments to judgment and to foreclose a putative tax lien against the taxpayer's proportional share of the trust assets as property "belonging to [him]"—or rather, in this instance, to his administratrix. See 26 U.S.C. §§ 6321 & 6322.

### II.

The district court considered the dispositive legal issue to be whether the Agreement, as a whole, indicates that the settlor-taxpayer intended to create a remainder interest in his heirs. Doubtless the court was moved to frame it so by the parties' apparent belief that the heirs would be home free if the property passed to them by remainder, while the government would win if the property reverted to the settlor's estate. The court wrestled with the inter vivos branch of the worthier title doctrine (whereby a remainder to one's "heirs" is deemed to revert to the grantor) and concluded that under West Virginia law there was no reversion. He treated the doctrine as a rule of construction rather than as an inflexible rule of law—with the result that the intent of the grantor governed. See In re Burchell's Estate, 299 N.Y. 351, 87 N.E.2d 293 (1949). We defer to his experience and expertise in the law of his own state. But we think that whether the United States can recover its tax does not depend upon how the taxpayer's heirs acquired their interest. In short, we hold that the government prevails whether the heirs took by "purchase" or by "descent," i. e., whether there was a remainder or a reversion with subsequent descent under the law of intestate succession.

---

* Judge Craven prepared the opinion bearing his name but died before the preparation of the concurring opinion.

** Western District of Virginia, sitting by designation.

## A.

■ No matter how clear a settlor's intent to vest a remainder in others may be for purposes of the "worthier title" doctrine, *see, e. g., In re Burchell's Estate, supra* (the retention of a general power of testamentary appointment sufficiently indicated an intent to make a gift to one's heirs, for otherwise the language is otiose), if he has retained too much control over the property he purports to convey, the conveyance itself may be considered legally or equitably void. A conveyance may be equitably disallowed as a constructive fraud to the extent the grantor has unsatisfied creditors, where he has so conveyed his property as to enjoy its benefits while shielding it from his debts. *Cf. In re Brown*, 41 A.D.2d 275; 342 N.Y.S.2d 174, 179, *rev'd in part*, 33 N.Y.2d 211, 351 N.Y.S. 655, 657, 306 N.E.2d 781 (1973).

■ Thus the district court erred in failing to consider the applicability to the conveyance of the doctrine that a settlor, who has reserved to himself *the income for life* and *a general power of appointment* over the remainder (with or without a gift in default of appointment), has retained "all the substantial incidents of ownership" and that therefore "it would be contrary to public policy to allow him by this formal change to prevent creditors from reaching the property." Restatement of Property, § 328, Comment *a* (1940). 72 C.J.S. "Powers" § 32 at p. 429 (1951).

## B.

Under the law of powers of appointment, the creator of the power is known as the "donor" and the recipient as the "donee." Here the deceased "non-taxpayer" was both donor and donee. Ordinarily equity will not compel or control the donee's discretion if he elects *not* to exercise a general power of appointment. But at the same time, it is thought to be the donee's duty to exercise a general power, if he does so at all, in favor of his creditors: to do otherwise being deemed a species of fraud. Thus, if he appoints in favor of a "volunteer" (*i. e.*, someone who is not a bona fide purchaser),

an equity court will treat the appointed assets as assets of the donee for the benefit of his creditors, if the donee's own estate is insufficient to satisfy their demands. *United States v. Field*, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617 (1921); *First National Bank of Chicago v. Mottola*, 302 F.Supp. 785 (W.D.Ill.1969). A few jurisdictions dissent from this position on the old theory that appointive assets are the actual property of the donor and that the donee is merely his agent. Yet even those few jurisdictions fall squarely into line where, as here, the donor is also the donee, since there can then be no question but that the appointive assets belong substantially to the donee—and especially where he has also reserved to himself the present income from the property. 62 Am.Jur.2d, "Powers," § 1116 at 213 (1972).

The Restatement of Property correctly sets forth the particular rule by which we are to be guided:

### CREDITORS OF THE DONEE—WHERE DONEE CREATES TRUST WITH LIFE ESTATE AND GENERAL POWER IN HIMSELF.

When a person transfers property in trust for himself for life and reserves a general power of appointment, although the power is not exercised, the interest subject to such power and the settlor's beneficial life interest, can both be subjected to the payment of the claims of creditors of such person and claims against his estate to whatever extent other available property is insufficient for that purpose.

Restatement of Property, § 328 (Supp.1948). *See also* 3 Powell on Real Property, ¶ 389 at 359–60 (1972); 72 C.J.S. "Powers" § 32 at p. 429 (1951); II Scott on Trusts, § 156 at 1193–1194 (3d ed. 1967); 93 A.L.R. 1211; Simes and Smith, The Law of Future Interests, § 944 (2d ed. 1956); A. W. Scott, *The Effects of a Power to Revoke a Trust*, 57 Harv.L.Rev. 362, 364 (1944) ("By the great weight of authority it is held that [where the settlor himself has a general power of appointment] the settlor is substantially the

owner of the property, and that his creditors can reach it whether he exercises the power or fails to exercise it . . ."); *In re Mogridge's Estate*, 342 Pa. 308, 20 A.2d 307 (1941); *Petty v. Moores Brook Sanitarium*, 110 Va. 815, 67 S.E. 355 (1910); *Egbert v. de Solms*, 218 Pa. 207, 67 A. 212 (1907); *J. S. Menken Co. v. Brinkley*, 94 Tenn. 721, 31 S.W. 92 (1895); *Brinton v. Hook*, 3 Md.Ch. 477 (1850). Moreover, the rule applies whether the power of appointment is exercised or unexercised, revocable or irrevocable, presently exercisable or testamentary, and without regard to the presence or absence of a gift in default. *Restatement of Property* § 328, Comment *c* (Supp.1948); 3 Powell on Real Property, § 389 at 360 (1973); II Scott on Trusts, § 156 at 1195 (3d ed. 1967); *Benedict v. Benedict*, 261 Pa. 117, 104 A. 581 (1918) (testamentary power; gift in default to settlor's widow and children and if none to his next of kin); *Liberty Storage & Warehouse Co. v. Van Wyck*, 165 Misc. 890, 1 N.Y.S.2d 149, *rev'd on procedural grounds*, 256 App.Div. 641, 11 N.Y.S.2d 92 (1939) (testamentary power; gift in default to settlor's brothers and sister and nephew).

Although we find no West Virginia statute or decision precisely on point, we do find that in a closely analogous context the West Virginia Supreme Court looked beneath the formal niceties of a conveyance to view its plutological reality. Where a testator prior to marriage had granted land to a trustee, for his own present benefit, and had retained a *presently exercisable* power of appointment over it, with the residue (if any) going to his children upon his death, the court held that the grantor retained at least an "equitable estate" in fee simple in the appointive assets for purposes of his wife's entitlement to dower. *Meyer v. Barnett*, 60 W.Va. 467, 56 S.E. 206 (1906). We think the West Virginia Supreme Court would similarly treat the appointive assets here as "equitable assets" of the settlor-donee for the benefit of his creditors.

Accordingly, the case is remanded to the district court so that it may verify that there are no other assets of the taxpayer's estate available to satisfy the government's claim, *see* Restatement of Property, § 328, Comment *g* (1940), and enter an appropriate order.

*REVERSED AND REMANDED.*

WIDENER, Circuit Judge, concurring:

▮ I agree with the result reached by Judge Craven, and, in large measure, with his opinion. I state my views separately only to emphasize that I regard the law of West Virginia as controlling this case, and to remove from the opinion any possible implication that State law does not govern the issue before us.

I also wish to make it clear that we announce no principle that a creditor can recover a debt from assets of a decedent debtor that may have previously passed directly to a third party through a remainder interest. Our holding is simply that, in accord with established law, it violates public policy for an individual to "have an estate to live on, but not an estate to pay his debts with." *Petty v. Moores Brook Sanitarium*, 110 Va. 815, 67 S.E. 355 (1910).[1]

I believe the district court applied the wrong State law and that the West Virginia Supreme Court, if called upon to decide this case, would find the *Petty* case to be the persuasive precedent, and would reach the same result we reach here. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

*Petty* stands for the proposition that a settlor of a trust cannot create the trust for his own benefit, while shielding the trust assets from his creditors. This principle, called "well established" by the West Virginia court, is cited with approval in *Guernsey v. Lazear*, 51 W.Va. 328, 41 S.E. 405, 409 (1902). See Annot. 34 A.L.R.2d 1335, 1342.

On this basis, I agree with Judge CRAVEN that the judgment of the district court must be reversed.

Judge WILLIAMS has authorized me to state that he concurs in this opinion.

---

1. While West Virginia has recognized spendthrift trusts by statute, for example, such a trust cannot be validly created when the settlor and the beneficiary are one and the same person. See W.Va.Code § 36–1–18.