**UNITED STATES of America**

v.

**SOUTHWESTERN LIFE INSURANCE COMPANY**

v.

**Anibal CAUSA, Mirta Causa, Mike Millan, Jr.**

**No. CA3–78–1476–F.**

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 9, 1981.

Kenneth J. Mighell, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., William W. Guild, Atty.-in-Charge, Louise G. Parks Hytken, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for the U. S.

Charles G. Barnett, Dallas, Tex., for Southwestern Life Ins. Co.

James E. Burk, Burk, Levy & Smith, Washington, D. C., James R. Nowlin, San Antonio, Tex., for cross-defendants.

## ORDER

ROBERT W. PORTER, District Judge.

The United States of America brings this civil action to enforce a tax levy served upon the Defendant Southwestern Life Insurance Company. The action has been authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, and is brought at the direction of the Attorney General of the United States pursuant to 26 U.S.C. §§ 7401, 7403. Jurisdiction is predicated upon 28 U.S.C. §§ 1340, 1345 and 26 U.S.C. § 7402.

The Defendant Southwestern Life Insurance Company ("Southwestern") filed a counter-complaint and cross-complaint in the nature of interpleader and has deposited the requisite security with the Court. By its cross-complaint Southwestern has joined the trustees and beneficiaries of the Employees Pension Trust upon which the United States seeks to levy. The parties have entered into a stipulation of the pertinent facts and agreed that there are no issues of fact for the Court.

### I.

The following facts have been stipulated by the parties:

(a) Anibal and Mirta Causa (hereinafter "taxpayers") are indebted to the United States in the total sum of $199,802.51 plus accrued interest and penalties from March 31, 1978, as shown in the schedule of unpaid tax liability attached hereto as Exhibit A.

(b) An assessment was made against taxpayers on July 7, 1977, by the Internal Revenue Service for unpaid individual federal income taxes in the amounts of $64,-445.59, $55,523.91, and $52,657.83 for the years 1970, 1971 and 1972, respectively. Proper notice and demand for payment of these assessments was made on Dr. Anibal Causa and Mirta Causa on July 7, 1977. The taxpayers have not remitted any payments towards the discharge of this obligation.

(c) The taxpayers are the named annuitants on certain annuity contracts attached as Exhibits 1 and 2 to the plaintiff's request for admissions and to the plaintiff's motion for summary judgment. The accompanying

applications for these annuity contracts are attached as Exhibits A and B to the plaintiff's request for admissions.

(d) The above-mentioned annuity contracts were issued pursuant to a pension plan set up for the employees of the professional corporation of Dr. Anibal Causa, M.D., P.A. Taxpayer Dr. Anibal Causa is the sole shareholder and president of this corporation and has been the sole shareholder of the corporation since its formation. A copy of the prototype plan and adoption agreement is attached to the plaintiff's motion for summary judgment as Exhibit 3.

(e) By resolution authorizing amendment No. 1, the terms of the trust were amended on April 27, 1976, so that Dr. Anibal Causa became the trustee or named fiduciary of this trust. (Deft. Southwestern Life's Memorandum in opposition to Plaintiff's Motion for Summary Judgment, Exhibit 3.)

(f) The only participants in the retirement plan, known as the variable form defined benefit plan (Defendant Southwestern Life's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 4), are the taxpayers, Anibal and Mirta Causa.

(g) The rights of Dr. Anibal Causa and Mirta Causa became immediately vested under the annuity contracts issued for their benefit.

(h) The annuity contracts, policies Nos. 1571784 and 1571785, pertaining to Anibal Causa and Mirta Causa, respectively, are in a paid up status at a reduced annuity level. The cash value of the annuity contract for Dr. Anibal Causa was for the amount of $203,500 as of December 28, 1978, and the cash value of the annuity contract for Mirta Causa was for the amount of $26,280.75 as of December 28, 1978. Under the contracts, the cash values are payable to the trustees.

(i) Under the terms of the trust established under the plan mentioned above, the trustees are the taxpayers, Anibal Causa and his wife Mirta Causa, and their son-in-law, Mike Millan, Jr.

(j) All documents attached to plaintiff's motion for summary judgment, plaintiff's request for admissions, and Defendant Southwestern Life's memorandum in opposition to plaintiff's motion for summary judgment are true and correct copies of documents pertaining to the retirement annuity contracts in issue.

(k) On March 20, 1978, the Internal Revenue Service served a notice of levy on Southwestern Life Insurance Company. This notice of levy was served on Joe W. Preston, local manager of the San Antonio office of Southwestern Life. The notice put Defendant Southwestern Life on notice that there was due and owing from the taxpayers to the United States the sum of $184,505.73.

(l) On April 11, 1978, final demand was served on Charles Barnett, attorney for Southwestern Life, at his office at 1807 Ross Avenue, Dallas, Texas. The document provided that if compliance was not made within five days, proceedings would be instituted by the United States to enforce the levy.

(m) Defendant Southwestern Life has refused to honor the levy and final demand served by the Government. Accordingly, upon the authorization and at the request of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, and at the direction of the Attorney General of the United States, the United States instituted civil action for the purpose of enforcing the levy served upon Southwestern Life Insurance Company.

(n) Defendant Southwestern Life answered and filed a counter-claim and cross-action in the nature of an interpleader, bringing into this action as cross-defendants Anibal and Mirta Causa in their individual capacities and in their capacities as trustees and Mike Millan, Jr., in his capacity as trustee. Southwestern Life has deposited its own bond with the Court and has asked that the Court adjudicate the relative rights of the parties with respect to funds payable under the annuity contracts in issue.

(o) The Court has jurisdiction of this action under Sections 1340 and 1345 of 28

U.S.C. and Section 7402 of the Internal Revenue Code of 1954.

## II.

The fundamental question raised by this action is whether the annuity contracts issued by Southwestern are property belonging to the taxpayers within the meaning of sections 6331 and 6332 of the Internal Revenue Code. The government contends that the taxpayer's beneficial interest in the trusts and their effective control of the trust through their position as the trustees and as the sole participants in the plan, as well as Dr. Causa's position as the sole shareholder and president of the association, render the annuity contracts subject to levy under section 6331. Section 6331 of the Code, entitled "Levy and Distraint" authorizes the collection of delinquent taxes "by levy upon all property and rights to property ... belonging to" the taxpayer. The taxpayers argue that, to the contrary, the annuity contracts are not property belonging to the taxpayers within the meaning of section 6331 because the trust, and not the employees/taxpayers, owns the contracts, and the retirement plan provides that none of the benefits provided under the plan can be assigned or alienated (commonly termed a spendthrift clause).

■ Whether a taxpayer has an interest in property for purposes of federal taxation is a question of state law. *Aquilino v. United States*, 363 U.S. 509, 512–514, 80 S.Ct. 1277, 1279–1280, 4 L.Ed.2d 1365 (1960); *Metropolitan Dade County v. United States*, 635 F.2d 512, 514 (5th Cir. 1981). The trust at issue in the instant case was set up for the purpose of establishing a pension plan for the employees of the professional association of Dr. Anibal Causa, M.D., P.A. Causa is the sole shareholder and president of the association which created the trust. The trustees of the trust are the taxpayers, Anibal Causa and his wife Mirta Causa and their son-in-law. The terms of the trust were amended in 1976 so

that Dr. Causa is the named fiduciary of the trust, and as such he has the authority to control and manage the operation and administration of the plan. The only participants in the retirement plan are Dr. Causa and his wife.[1] Their rights to the accrued benefits under the plan are 100% vested. In order to qualify the trust as a defined benefit plan as described in section 401(a) of the Internal Revenue Code, section 21.1 of the agreement governing the operation of the trust provides as follows:

"No employee participating in the Employers Plan shall have the power prior to the Normal Retirement Date to anticipate, assign, hypothecate, or transfer and likewise no beneficiary of any Employee participating in the Employers Plan shall ever have the right to anticipate, alienate, assign, hypothecate or transfer any Benefits provided under such Plan, except as may be expressly authorized by the terms hereof. No benefits shall be subject to any debts or liabilities of such Participant or Beneficiary."

Although the government contends that the terms of the trust empower the taxpayers as trustees to terminate the plan resulting in an immediate cash distribution of funds, there is nothing in the terms of the plan to so indicate. As the taxpayers argue, at most sections 2 and 12 of the plan state that the continued existence of the qualified Trust and the underlying Employer's Plan cannot be guaranteed by the trustees or the employer against such events as revocation of the tax-exempt status.

■ Section 21.1 is a classic spendthrift clause under the law of Texas. *See State v. Rubion*, 308 S.W.2d 4, 8 (Tex.1957) (a "provision, either express or necessarily implied, which restrains alienation of the beneficiary's interest or makes such interest immune from claims of creditors compatible with the purposes of the trust"). Texas recognizes the validity of spendthrift trusts except where the settlor creates the trust and makes himself the beneficiary. *Adams*

---

[1]. The taxpayers as individuals own the contractual rights to designate beneficiaries and

death-time settlement modes.

**66**

v. *Williams,* 112 Tex. 469, 248 S.W. 673 (Tex.1923); *First Bank & Trust v. Goss,* 533 S.W.2d 93, 95 (Tex.Civ.App.—Houston [1st Dist.] 1976, *no writ*). Neither the corpus nor the income of a spendthrift trust in the hands of a trustee are subject to the claims of a beneficiary, and this is true not only of the corpus and future income but also the income which has already accrued in the hands of the trustee, but which has not yet been paid to the beneficiary. *First Bank & Trust, supra* at 95. A pertinent inquiry for the Court then is whether it can be said that, in this case, the taxpayer is not only the beneficiary, but also the settlor. For example, in *United States v. Ritter,* 558 F.2d 1165 (4th Cir. 1977) the Court, in an action brought by the government to foreclose tax liens, examined the transaction in question to determine whether or not in substance it worked a constructive fraud upon creditors. There the Court applied the doctrine that a settlor, who reserves to himself the income for life and a general power of appointment over the remainder retains all substantial incidents of ownership and the conveyance may be equitably disallowed. *Id.* at 1167.

The taxpayers contend that the Court must take cognizance of the separate corporate character of the professional association formed by Dr. Causa apart from his position as an employee of the association and a beneficiary under the plan. See Tex. Rev.Civ.Stat.Ann. art. 1528f (Vernon's 1980). And yet, Dr. Causa was the only member of the professional association, its sole shareholder and the named fiduciary of the trust established by the employer, Dr. Causa's professional corporation. Under these circumstances, it strains reality to argue that Dr. Causa was not the settlor of the trust in question. Accordingly, it is the opinion of the Court that the reality of the transaction is that the taxpayer is not only the beneficiary of the trust by virtue of his position as an employee under the plan, but also the settlor and the trustee. Therefore, I do not believe that the annuity contracts in question are beyond the reach of the Internal Revenue Service's levy powers, because the contracts are "property [or] rights to property . . . belonging to the taxpayer."

III.

Because I have concluded that the annuity contracts in question are property belonging to the taxpayers for purposes of section 6331 of the Internal Revenue Code, the government is entitled to have its notice of levy to Southwestern enforced, and the amount of its federal tax liens satisfied therefrom. Southwestern takes the position of a disinterested stakeholder of the annuity contracts in issue, and seeks a judicial determination of its respective obligations to the government, the trust, and the taxpayers. Since the contracts are property belonging to the taxpayers pursuant to section 6331 of the Internal Revenue Code, and therefore "subject to levy", section 6332(d) of the Code operates as an effective discharge of Southwestern's obligations to the taxpayers, the trust, and the government. Therefore, in light of the foregoing,

It is ORDERED that Plaintiff's motion for summary judgment is GRANTED: the United States is entitled to have its notice of levy upon Southwestern Life Insurance Company enforced and the amount of its federal tax liens against the taxpayers satisfied therefrom; and

It is further ORDERED that the cross-motion for summary judgment of Cross-Defendants Anibal Causa, Mirta Causa, and Mike Millan, Jr. is DENIED.